## French's Estate.

*Wills—Construction—Termination of trust—Contingency—Intestacy.*

Where both a daughter by name and a son by name are given a certain definite share of income of the residuary estate held in trust for four children mentioned by name, there is an intestacy as to the income released by the respective deaths of the son and daughter, the will being silent on the subject, although upon the death of the survivor of testator's four children the trust is to continue for the benefit of his grandchildren and their issue until the death of all the grandchildren living at the time of testator's decease, and such income passes to testator's next of kin.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1924, No. 3323.

The facts and the relevant clauses of the will appear from the following extract from the adjudication of

HENDERSON, J., Auditing Judge.—At the time of his death in 1895, the testator left the following children to survive him and no issue of a deceased child:

(1) Clara Angelina, who intermarried with Adam Jakob and died in 1901, leaving to survive her an only child, Gnade B. Jakob;

(2) Mary Harriet, who survives and is single;

(3) Howard B., who died in 1924, and who has left to survive him one daughter, Anna French, who intermarried with Edgar S. McKaig; and

(4) Emmor D., who died in 1904, leaving to survive him three daughters, Minnie Lippincott French Johnson, Alice French and Mary Helen French Schauffele.

The will of the testator is written at great length, but is very inartificially drawn.

The account has been filed so that the only child of Clara Angelina, Gnade B. Jakob, can raise the question as to her right to share in the income after the death of her mother.

The clauses requiring interpretation are the 12th, 15th, 16th, 17th, 20th and 22nd, and are as follows:

"Twelfth—As to all the rest, residue and remainder of my estate, real, personal or mixed, or whatsoever or wheresoever located, I do give, devise and bequeath the same, and every part and parcel thereof to my Trustees, hereinafter named, their heirs, executors and administrators and assigns, and the survivors and survivor of them; or to such person or persons, corporation or corporations, as may succeed them in said office; In Trust, nevertheless, and to, for, and upon the uses, intents and purposes following—that is to say, In Trust, to collect and receive the rents, income, interest, dividends, and profits thereof, when and as the same shall become due and payable, and after first deducting all expenses attending the execution of the trust, it is my will and I do order and direct that my trustees hereinafter named shall pay out of the total net income so received, unto my said daughter Clara Angelina French, the sum of Three thousand five hundred dollars per annum and unto my daughter Mary Harriet French, the sum of Two thousand and five hundred dollars per annum, or such sum as may be in their hands *pro rata* on that basis, until said sums shall reach Six Thousand Dollars per year, to be divided as above. It is my desire and I so direct that quarterly payments shall be made to my said daughters, and that said payments shall be continued during the term of their respective natural lives for their own sole and separate use, benefit and behoof, upon their own receipts and so that the same shall be in no way or manner liable for their debts, contracts or engagements, whether by way of assignment, anticipation, or otherwise howsoever, and so that the shares of the said net income and interest payable to my

French's Estate.

daughters shall not be subject to, or liable for the debts, contracts or engagements of any husband or husbands they may hereafter respectively have or take, or to his or their control or interference in any way whatsoever. Any surplus over and above this amount, I direct my trustees to apply to the liquidation of mortgages that may stand against any of my properties at the time of my decease, or that may have been placed upon the same by my Trustees as hereinafter specified. . . .

"Fifteenth—After all my real estate is clear of incumbrance (which I wish accomplished without disposing of any of my personal property, unless in the judgment of my trustees it is better so to do) I direct that the surplus income over and above the Six thousand dollars to be paid to my said daughters as provided for in Paragraph Twelfth of this my will, shall be equally divided quarterly between my sons, Emmor Davis French and Howard Barclay French, until such sums shall amount yearly to Two thousand five hundred dollars each, or a total of Five thousand Dollars, after which I direct that any further sum shall be equally divided quarterly between my two sons, above named, and my daughter, Mary Harriet French, until said sums shall amount to three thousand five hundred dollars each, or a total of Ten thousand five hundred dollars; after which all the further excess income of my estate, unless otherwise provided for, shall be equally divided, quarterly, between my four children, Emmor D. French, Howard B. French, Mary H. French, and Clara A. French, share and share alike, subject however to the following clause or paragraph.

"Sixteenth—I further direct that my entire estate, not otherwise disposed of by this will, shall be held in trust for my four children named in paragraph fifteen of this my last will and testament, the income of which shall be paid to them in quarterly payments as aforesaid, for and during the term of their respective natural lives, for their own sole and separate use, benefit and behoof, upon their own receipts and so that the same shall be in no way or manner liable for their debts, contracts, or engagements, whether by way of assignment, anticipation or otherwise howsoever, as hereinbefore specified; and the *corpus* or principal shall be subject to their will only so far as designating by their respective last Will and Testament, to which one or ones of my children or my daughter-in-law, Ida Colket French (the wife of my son, Howard B. French) they may desire their respective share or interest to descend to, or be devised and bequeath to, as aforesaid. This last clause must not be misconstrued to grant any testamentary privilege beyond naming those of my children or daughter-in-law, Ida Colket French, to whom they may desire to have their portion of the principal of my estate to descend to or be will[ed] to, subject, however, to the provisions made hereinafter for the distribution of my estate.

"Seventeenth—Should 'the majority of my children then living at any time think it best to have the trust established by this will dissolved they can do so by their written direction and consent addressed to the trustees of my estate for the purpose; provided, however, that the trust established and hereby confirmed for my son, Emmor D. French shall be absolute, and the income arising from the same shall be for his own personal benefit and in no way liable for his debts, contracts, or engagements, whether by way of assignment, anticipation or otherwise whatsoever, and in case of his death, the income from said portion of my estate, which would have gone to my son, Emmor D. French, were he alive, shall be paid unto his children share and share alike; and in case of the death of any one or more of his children without legal issue, then to the survivors or survivor of them. . . .

"Twentieth—After the death of all my children, I direct the surviving trustees or trustee to place my estate under the control of an established Trust Company located in the city of Philadelphia, Pa., to be held in trust, nevertheless, for the benefit of my grand-children or their legal issue as aforesaid, each subject to the same conditions as named in paragraphs 12 and 16 of this my Will, relating to its non-liability for their debts or the control of their respective husband or husbands. . . .

"Twenty-second—I order and direct that the trust hereby established shall be kept in force until the decease of all my grandchildren now living—after which the *corpus* or principal of my estate shall be divided among the legitimate heirs of my grand-children in such proportion as my children would be entitled to were they living, or should any of my children bequeath and devise their portion of my estate to another as hereinbefore provided, then the legal issue of my grand-children shall have and enjoy said portion of my estate."

The question raised by Gnade B. Jakob relates to the proper disposition of the income since the death of her mother in 1901. It should be stated that this is the first account that has been filed since that time; and, furthermore, that this account only shows the receipt of income since the substitution of this trustee after the death of Howard B. French, surviving trustee named in the will.

I will briefly review the foregoing clauses:

Under the 12th clause of the will, Clara Angelina was preferred as to income up to $3500 per annum, afterwards by codicil raised to $5000. I am informed that this preference in her favor was made due to the fact that she was an invalid practically from birth. This clause of the will then gives a preference to Mary Harriet up to $2500 per annum. The daughters' shares are limited for life and are spendthrift in form.

The last sentence in the 13th clause directs that all further income should be used in the liquidation of mortgages against the properties owned by the decedent. Counsel, however, informed me that there were no such mortgages, and none have been liquidated out of income.

The 15th clause, after the payments as above provided for, then gives $2500 per annum to each of the sons, Emmor and Howard; then there is a provision that, up to $3500 apiece, Mary, Emmor and Harriet shall share equally; after which all further "excess income . . . unless otherwise provided for" is divided equally among the four children, naming them, and to be "share and share alike."

It should be noted that neither the 12th nor the 15th paragraphs make any provision over upon the death of any of the children, although there is a later provision made in reference to the share of Emmor, which, at his death, passed to his children.

The 16th clause gives the entire estate, "not otherwise disposed of by this will," in trust for the four children as named in paragraph 15, the income to be paid to them equally and spendthrift in form.

Then occurs the following provisions:

"And the *corpus* or principal shall be subject to their will only so far as designating by their respective last Will and Testament, to which one or ones of my children or my daughter-in-law, Ida Colket French (the wife of my son, Howard B. French) they may desire their respective share or interest to descend to or be devised and bequeath to, as aforesaid. This last clause must not be misconstrued to grant any testamentary privilege beyond naming those of my children or daughter-in-law, Ida Colket French, to whom they may desire to have their portion of the principal of my estate to descend to or

French's Estate.

be willed to, subject, however to the provisions made hereinafter for the distribution of my estate."

This clause is certainly clumsily worded, because, while it professes to give the children a power of appointment over the principal, it will be seen that the power is subject to the provisions thereinafter made for the distribution of the estate; and as a further trust is created to last until the survivor of the then living grandchildren passes away, it will be seen that the power to dispose of any portion of the *corpus* is illusive. What the testator had in mind, we may not guess.

The brief *contra* which has been presented to me is styled that of the trustee. It is substantially a brief on behalf of Mary Harriet French. Therein it is argued that, while paragraph 15 gives to each of the four children, naming them, the testator, by grouping them together and calling them children, evidenced an intent to create a class out of them. An examination of the 15th paragraph shows that the quotations cited in the brief have been emasculated. The paragraph reads, "my said daughters as provided for in Paragraph Twelfth of this my will," and, by reference to paragraph 12, we find the testator names the daughters individually, and by a further reference to paragraph 15, "my sons," Emmor Davis French and Howard Barclay French, and later on "my four children, Emmor D. French, Howard B. French, Mary H. French and Clara A. French." There could not be a greater individualization than the testator has directed.

It is argued further that, because, by paragraph 16, he speaks of these individualized children with plural pronouns, this indicates a class. It is common usage in English composition, when you are speaking of males and females, thereafter to refer to them with the plural pronoun, [rather] than to try to individualize as between the sexes, or as individuals.

Paragraph 16 at its best is a mere repetitive of the last thought of paragraph 15, and no one but the draftsman of the will knows its intent, and I doubt if he really would. This will uses words, words, words in an effort to confer intent, without having clearly visualized it. This paragraph refers to *corpus* not disposed of—and puts it in trust. There is no undisposed of *corpus*, and all the *corpus* is in trust and must remain there until the death of the surviving grandchild who was living in the lifetime of the testator. The power which this clause confers upon the children to dispose of their shares by will is illusive, because the *corpus* continues in trust as above stated and is then given to the legitimate heirs of the grandchildren. It is argued that, under paragraph 17, a majority of the children may end the trust, and it is said that the use of the word "majority" is strong evidence of the creation of a class, because to have a majority you must have more than two and this would be a class. I cannot follow this reasoning. The four children are named as individuals and each is given one-fourth of the income. The reason for this provision is not far to seek—the daughter, Mary, is unmarried and without issue, and, hence, by giving a majority the right to determine whether the trust shall be ended, [he] puts it in the power of the two sons to say that Mary shall not have her share absolutely and thereby divert it from the issue of the grandchildren. In other words, the grandchildren may not be deprived of the share of any child dying without issue without the consent of their parents.

It is further argued by the trustee's brief that, under paragraph 26, a majority of the children may select a new trustee, and that this indicates that he was dealing with his children as a class. Can it be said that from this, by necessary implication, a class results? Each of the four children has a one-fourth interest in the same; they were not separate trusts, and what fairer

method could be devised of choosing a succeeding trustee—the method which the law would apply in the absence of this provision.

Rowland's Estate, 141 Pa. 553, has been cited as at least similar to the instant case. Therein the gift of income was to the five children, naming them, and to the issue of two deceased children, and the issue of any others dying at any time until the death of the survivor of the children. One of the children died without issue and that share was divided among the remaining children and the issue of deceased children. In that case, there was provision for issue, and on the death of a child without issue his share was awarded to the others. On the other hand, in the instant case, we have no provision for issue, and we do have the death of a child with issue, and that child's share is claimed by the other children, notwithstanding the fact that the testator has specifically given Emmor's share to his children. Rowland's estate is not in point.

As above remarked, the meaning of clause 16 is most difficult to ascertain. The introductory sentence is really the thought of the last paragraph of clause 15. Therein is a disposition of all income, "unless otherwise provided for," and now the phrase is, "entire estate not otherwise disposed of." As above remarked, the power to appoint the *corpus* is illusive and there is in this clause no further gift of income, merely a direction for payments to be made "as aforesaid" and now spendthrift in form.

Probably the key to the testator's intent, or lack of intent, lies in the fact that, by clause 17, he gave the majority in number of his children the right to end the trust and receive their shares, except as to Emmor. He probably expected that this right would be exercised, and in that case the lack of a gift over on the deaths of the three would not be important. This power has not been exercised, due, probably, to the fact that Clara Angelina, the cripple, much to the surprise of the family, married, and, to their greater surprise, left a child, Gnade, who is now before me asking for an interpretation of the will. Had the trust been terminated, the children of each of the children of the decedent would presumably be benefited thereby; as it is now, only the children of Emmor, due to the express provision in the will in their favor, are in receipt of their father's share of the income; Mary is living and has her share; Gnade, the child of Clara Angelina, is claiming a share; and Mrs. McKaig, the only child of Howard B., makes no claim. . . .

I have reached the conclusion that the intent of clause 16 is far from clear and is too obscure to base any finding upon it disinheriting the heirs, which only may be done by plain words or necessary implication; and I, therefore, find that the testator has died intestate as to the shares of the income payable to Clara Angelina and Howard B., and these shares will be awarded in equal fourths to Mary Harriet and the personal representatives of the deceased children, the share of Howard B. to be retained by this accountant and to be made the subject of a supplemental adjudication after his personal representative has accounted for his administration of this trust.

In distribution for the protection of the shares of Mary and of Emmor's children, it should be pointed out that each must first receive all the will gives them before ascertaining the shares which pass under the intestate law.

After giving the four children income aggregating $15,500, he directs that the "further excess income" shall be divided between the four, naming them, so that, in order to ascertain this excess, in which Mary and Emmor's children have each a vested one-fourth interest, we must first deduct the whole $15,500, although the shares of Clara Angelina, $5000, and Howard, $3500, will eventually pass as under an intestacy. The testator has treated as "fur-

French's Estate.

ther excess income" an amount to be definitely ascertained by first deducting $15,500: See Lewis's Estate, 25 Dist. R. 501. Of the excess so ascertained, one-quarter will be awarded to Mary and one-quarter to Emmor's children.

There will then pass under the intestate law Clara's $5000, Howard B.'s $3500 and one-half of the excess, being the shares of Clara and Howard, and this combined sum will be awarded in equal parts to Mary, Emmor's children, Howard's and Clara's personal representatives.

That Gnade B. Jakob is the child of Clara Angelina Jakob is shown by certified copy of her birth certificate hereto annexed and by affidavit of Katherine M. Lawser, graduate nurse, who attended the mother at confinement.

The account shows a balance principal of..............$399,917.73
From which deduct additional counsel fee to Mr. McKaig,
as to which his explanatory letter is attached........     500.00
                                                      _____
          Balance....................................$399,417.73

which, composed as indicated in the account, is awarded to be retained by the accountant as trustee for the uses and purposes declared by the testator's will.

The account shows a balance of income of $26,439.43, which is awarded in accordance with this adjudication.

E. S. McKaig, for exceptions; R. F. Irwin, contra.

LAMORELLE, P. J., March 25, 1927.—This is the question to be decided: Where both a daughter by name and a son by name are given a certain defined share of income of the residuary estate held in trust for four children by name, to whom does the income released by the respective deaths of this daughter and son pass, the will being silent on the subject, though, upon the death of the survivor of testator's four children, the trust is to continue for the benefit of grandchildren and their issue until the death of all grandchildren alive at time of testator's decease?

The Auditing Judge held that an intestacy as to the income earned by the principal of these two shares resulted from testator's failure to provide for such contingency. The exceptions, twenty-five in number, filed on behalf of a remaining child and the three children of a deceased son, claim that the will shows an intention to create a survivorship in such income for their benefit, and for them alone, thus ignoring entirely the claim of the one child (granddaughter) of the one deceased daughter, and the one child (granddaughter) of the other deceased son.

The Auditing Judge quotes in full the items of the will relating to the trust and all other facts essential to a proper understanding of his conclusions. It is possible, however, that a further brief statement may be necessary to clarify the existing situation.

When, in 1893, Samuel H. French executed his will, he had four children, all of whom survived him. These children were Howard B. French, who had one child; Mary Harriet, who was single and still is; Emmor D., who had three children; and Clara Angelina, who was then unmarried. Conditions were not changed when he made the codicil. Clara Angelina afterwards married, in 1894, some eight months prior to the death of her father, the testator.

Testator died in 1895.

Clara Angelina, a daughter, died in 1901, survived by one child, Gnade B. Jakob, who is now of age.

Emmor D., a son, died in 1904, survived by three daughters.

Howard B., a son, died in 1924, survived by one daughter.

French's Estate.

As before stated, Mary Harriet is living and unmarried.

While three executors were named in the will but two qualified. They were not required to account, and, therefore, never did.

Upon the death of the survivor of the executors and trustees, Howard B. French, Fidelity-Philadelphia Trust Company was appointed succeeding trustee, and its account—the only one ever filed in the estate—is filed apparently for the express purpose of having the court determine who are entitled to income.

In considering the question raised by exceptants, it appears that nowhere in the will are the children treated as a class. Any grouping which would otherwise indicate a class refers to them as the said children. As a class, they were never in testator's mind—as expressed in the will. Grandchildren are in some instances treated as a class, especially with reference to the continuance of the trust.

Under certain conditions, dependent upon the amount of income, all of the four children, except possibly Clara Angelina, were to participate equally therein. She, Clara Angelina, given a preference by will in the sum to be paid her each year, had the amount thereof increased by codicil made before her marriage.

While the general trust was to continue for the benefit of grandchildren, after the death of all of the children, a majority of the children, if such majority deemed it best, was authorized to dissolve the trust, except, however, as to the share of Emmor D. French, a son. The trust as to him was to be absolute, and on his death the income was to be paid unto his children, with right of survivorship: see Item Seventeenth.

This item is suggestive in this: It shows conclusively that testator knew how to provide for succession in receipt of income as to grandchildren, when it was his purpose so to do, and that he recognized survivorship in income (at least so far as his own will was concerned) was not a matter to be left to implication, but that it was necessary to be set forth in express terms.

As to the other three children, no provision whatsoever is made as to the destination and distribution of income when and as such children died; nor is there anything in the will helpful to a ruling on the question.

It would seem that Grothe's Estate, 229 Pa. 186, wherein the widow, son and grandson were each to have one-third of the income for life, and if the widow remarried, the other two were to take all, is of moment in reaching our conclusion. The trust was to endure for the longest liver of the three. Two died, and the grandson claimed *all* of the income. What was said by Mr. Justice Mestrezat, speaking for the Supreme Court (pages 190-91), is peculiarly in point: "The *corpus* of the trust fund is to be distributed at the death of the grandson. There is, therefore, no ground for the contention of the grandson to be found in the express language of the will that, since the death of the widow and son, he is entitled to the whole income during the life of the trust. His right to the income rests wholly on the doctrine of an implied gift or cross-limitation. But this must arise from the language of the will, and unless there is a clear implication that such limitation was intended by the testator, the fund cannot be taken from the heir and disposed of through another channel of distribution. The gift of the income is not to a class, but to the three beneficiaries *nominatim;* neither is it a joint tenancy with the right of survivorship. The plain language of the will vested the income in the three individuals respectively until the death of the son and the grandson and the death or remarriage of the widow. Whether intentionally or otherwise, the testator did not dispose of the income after the life estate

French's Estate.

given to the three individuals, and, therefore, there is no reason to suppose that he intended that the survivor should take the whole income until the distribution of the *corpus* of the trust fund, unless the presumptive intention to avoid an intestacy should disclose such purpose. This, however, is not a sufficient reason for implying a gift or a cross-limitation. If it was, no intestacy would ever occur."

In holding in the instant case that there is an intestacy, the rights of the one remaining child, as well as the three grandchildren who take the shares of income given them by the will on the death of their father, are preserved and safeguarded, and they, as well as the other two grandchildren, participate equally, *per stirpes*, in the income not given by the will.

As we agree with the Auditing Judge in his construction of the will, all exceptions are accordingly dismissed and the adjudication is confirmed absolutely.

Thompson, J., did not sit.